1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  WILL MOSES PALMER, III,                    CASE NO. 1:06-cv-00512-LJO-SMS PC

10            Plaintiff,                       ORDER REQUIRING PLAINTIFF TO EITHER
                                               FILE AN AMENDED COMPLAINT OR NOTIFY
11     v.                                      THE COURT OF WHICH CLAIM HE WISHES
                                               TO PROCEED ON IN THIS ACTION
12  JEANNE WOODFORD, et al.,
                                               (ECF No. 18)
13            Defendants.
    _____/         THIRTY DAY DEADLINE
14

15  **I.    Procedural History**

16        Plaintiff Will Moses Palmer, III ("Plaintiff"), a state prisoner proceeding pro se in this civil

17  rights action pursuant to 42 U.S.C. § 1983, filed this action on April 28, 2006.  On January 13, 2009,

18  an order issued finding cognizable claims. (ECF No. 22.) Following service of process Defendants

19  filed a motion to revoke Plaintiff's in forma pauperis status pursuant to 28 U.S.C. § 1915(g) and

20  dismiss this action on July 31, 2009.  (ECF No. 37.)  On March 22, 2010, Defendants' motion to

21  revoke Plaintiff's in forma pauperis status and  motion to dismiss were granted, and this action was

22  dismissed.  (ECF No. 51.)

23        On April 8, 2010 and April 14, 2010, Plaintiff filed duplicate motions for reconsideration of

24  the order dismissing the action and requests for judicial notice. (ECF Nos. 53, 54, 55, 56.) On April

25  22, 2010, Plaintiff filed a notice of appeal.  (ECF No. 57.)  On May 25, 2010, the Ninth Circuit

26  issued an order holding the  appellate proceeding in abeyance pending resolution of Plaintiff's

27  motions for reconsideration.  (ECF No. 61.)  On July 26, 2011, this action was reassigned to the

28  undersigned. (ECF No. 63.) On August 5, 2011, an order issued granting Plaintiff's motion for

1  reconsideration and reinstating Plaintiff's in forma pauperis status and reopening this action.  (ECF
2  No. 64.)

3  **II.      Sua Sponte Screening of Complaint**

4          **A.      Screening Authority**

5          The Court is required to screen complaints brought by prisoners seeking relief against a
6  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
7  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
8  "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks
9  monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

10         In determining whether a complaint states a claim, the Court looks to the pleading standard
11  under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and
12  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).
13  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it
14  demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v.
15  Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555
16  (2007)).

17         On January 13, 2009, Plaintiff's complaint was screened and found to state a cognizable
18  claim against Defendants Jordnt, Bardonnex, Berkson, Wang, Huang, Clement, Lemoy, Tarter, Idell,
19  and Key.  On May 18, 2009, the United States Supreme Court issued its decision in Iqbal.  The
20  decisions since Iqbal erase any doubt that there has been a significant departure from prior cases
21  holding that a complaint may only be dismissed if it is clear that no relief could be granted under any
22  set of facts that could be proved consistent with the allegations.  Moss v. U.S. Secret Service, 572
23  F.3d 962, 972 (9th Cir. 2009).  Accordingly, in light of the reassignment to the undersigned and the
24  decision in Iqbal, the Court shall exercise its screening authority and sua sponte re-screen Plaintiff's
25  complaint.

26         The Court finds that Plaintiff's complaint states a cognizable claim against Defendants Jordnt
27  and Bardonnex for retaliation and denial of access to the court in violation of the First Amendment;
28  Defendants Berkson, Wang, and Clement for involuntarily medicating Plaintiff in violation of due

process; and Defendant Lemoy for deliberate indifference in violation of the Eighth Amendment; but does not state any other claims for relief under section 1983. However, as discussed below, these claims are unrelated and may not be joined in this action. Accordingly, if Plaintiff wishes to proceed on one of the claims found to be cognizable, he must notify the Court which claim he wishes to pursue in this action. If Plaintiff elects to amend his complaint, his amended complaint must comply with Federal Rule of Civil Procedure 18.

### B. Complaint Allegations

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at Kern Valley State Prison ("KVSP"). Plaintiff's claims in this action arose after he was deemed a threat to staff at Salinas Valley State Prison ("SVSP") and he was transferred to the Substance Abuse Treatment Facility ("SATF") on November 23, 2005. (First Amended Compl. 3.2, ECF No. 18.) Plaintiff is seeking injunctive relief and compensatory and punitive damages.

Claim One

On December 7, 2005, Plaintiff went before the Unit Classification Committee and was informed that he would be housed in the general population. Plaintiff asked to be provided access to the law library and telephone. Defendant Mendes stated that he was not responsible for providing court ordered phone calls and Plaintiff would have to address his request to the litigation coordinator. After Plaintiff was returned to his assigned cell, he was taken to the C-Facility medical clinic, placed in a holding cell, and issued a CDCR 114-D Administrative Segregation Notice. The notice stated that Defendant Johnson had informed Defendant Gallagher that she feared for her safety due to Plaintiff's presence at CTFS and for that reason he would be placed in administrative segregation ("ASU"). Plaintiff explained to Defendant Gallagher that he had been acquitted of the 2004 battery charge, but Defendant Gallagher instructed Plaintiff be taken to ASU anyway. (Id.)

After his central file was reviewed, it was determined that Plaintiff had been acquitted of the offense and he was informed that he would be placed in general population as soon as a cell became available. Later that same day Defendant Gallagher issued a second CDCR 114-D Administrative Segregation Notice giving the exact same reason for Plaintiff's placement in ASU. Plaintiff

requested an investigative employee be assigned for the hearing and that Defendant Johnson be a witness at the hearing.  Plaintiff alleges that his due process rights were not honored and he was held in ASU for five months and his wheel chair was taken.  (<u>Id.</u>)  Plaintiff brings this action against Defendant Mendes for retaliating against Plaintiff by placing him in ASU in violation of the First Amendment and due process.  (<u>Id.</u> at 3.22.)

<u>Claim Two</u>

While confined in ASU Plaintiff made multiple requests that his legal property be returned to him, for access to the law library, and the court ordered phone calls.  Defendants Lopez and Jordnt repeated refused to provide Plaintiff with his legal documents.  Plaintiff showed Defendant Jordnt and Bardonnex a document from the Court requiring him to provide specific legal documents within ten days.  Defendants informed Plaintiff that his legal documents had not arrived from SVSP, while fully aware that the R & R log showed that his property had been received on December 7, 2005.  Defendants Jordnt and Bardonnex allegedly withheld Plaintiff's property in retaliation for Plaintiff complaining to Sergeant Davis about their refusal to provide Plaintiff access to an adequate law library and weekly telephone calls to the court appointed investigator.  Plaintiff's habeas proceeding was terminated because Plaintiff was unable to provide the requested legal documents.  (<u>Id.</u>)

Plaintiff alleges that Defendant Jordnt and Bardonnex retaliated against Plaintiff for withholding his legal documents which prevented Plaintiff from submitting documents to the District Court on his appeal.  The appeal was denied solely on the ground that Plaintiff did not submit the documents which were withheld by Defendants Jordnt and Bardonnex.  (<u>Id.</u> at 3.22.)

<u>Claim Three</u>

As a result of the stress that Plaintiff was experiencing, he requested to see the building psychiatrist.  Plaintiff asked the psychiatrist to have him moved to another ASU building due to the problems he was having with the building officers.  The psychiatrist informed Plaintiff that she did not have the authority to move Plaintiff to another building, but could only refer Plaintiff to the Correctional Treatment Facility ("CTF") to be evaluated for placement in a mental health crisis bed.  (<u>Id.</u>)  Upon being questioned, Plaintiff informed the psychiatrist that he was not suicidal, but something kept telling him to bite.  (<u>Id.</u> at 3.4-3.5.)  The psychiatrist misinterpreted this statement

4

1   to be that Plaintiff was hearing voices and directed officers to take Plaintiff to the CTF.  (Id. at 3.5.)

2       Defendants Phillips and Hopkins left Plaintiff sitting in the cold rain for fifteen minutes

3   wearing nothing but boxer shorts and a t-shirt.  Officer Gonzales saw Plaintiff shivering in the rain,

4   wheeled him back into the building, and provided him with a wool blanket.  Defendant Hopkins

5   stated, "Let that asshole freeze."  (Id.)

6       Plaintiff was seen by Defendant Toria who assessed Plaintiff.  Plaintiff informed Defendant

7   Toria that he had not received his prescribed pain medication.  Defendant Toria told Plaintiff that

8   she would let the doctor know and get his pain medication.  Plaintiff was given three pills that he

9   was told were pain medication and muscle relaxers.  Plaintiff was later informed that the pills were

10  antipsychotic drugs.  These same drugs were administered to Plaintiff on March 18, 19, and 20,

11  2006, after which Plaintiff refused to take them.  (Id.)

12      Plaintiff alleges that Defendants Toria and Wang prescribed and administered antipsychotic

13  drugs without Plaintiff's knowledge and consent under the false representation that the medication

14  was for pain, in violation of due process and the Eighth Amendment.  (Id. at 3.22.)

15      Claim Four

16      On March 21, 2006, Plaintiff discussed the effects that the medications were having on him

17  with Defendant Wang.  Plaintiff agreed to try a new medication.  On March 22, 2006, Plaintiff

18  refused to take any medication because he was still feeling the effects.  Plaintiff was placed in five

19  point restraints for failing to take the medication and injected with a antipsychotic drug, plus an

20  additional 20 m. g. as punishment for refusing to take the drugs orally.  (Id. at 3.7.)  Plaintiff alleges

21  that he was not suffering from any mental illness that required medication.  (Id. at 3.8.)

22      Plaintiff suffers from a ruptured disc and degenerative disc disease.  Plaintiff informed

23  Defendants that he was suffering pain from this injury.  Defendants Huang, Wang, Berkson, and

24  Clement disregarded his injury and refused to consult a medical doctor regarding the amount of pain

25  he would experience from being placed in five point restraints.  (Id. at 3.7.)

26      After being released from the five point restraints Defendant Wang informed Plaintiff that

27  he would be administered a higher dose of antipsychotic medication every time he refused his

28  medication and would be placed in five point restraints for a longer period of time.  When Plaintiff

1  asked about his right to refuse medication Defendant Jackizvich informed Plaintiff that he did not

2  have the right to refuse medication.  (Id. at 3.9.)

3      On March 28, 2006, Plaintiff informed Defendant Clement that he had the right to an

4  advocate at the hearing to decide whether to involuntarily medicate Plaintiff.  Defendant Clement

5  responded that she was not aware of the process and would try to find out more information for

6  Plaintiff.  (Id.)  Plaintiff refused to take his psychotic medication and was placed back in five point

7  restraints and injected with a higher dose of medication.  Plaintiff alleges he was not suffering from

8  any mental illness requiring him to be medicated.  (Id. at 3.10.)

9      While Plaintiff was in five point restraints an unidentified defendant ("Doe") entered

10  Plaintiff's room and identified himself as a Certificate Notice Reviewer.  He informed Plaintiff that

11  he was there to review the records and determine if there was probable cause.  He found probable

12  cause without asking Plaintiff any questions and left.  (Id.)

13      At a later date, Plaintiff met with Defendants Wang and Jackizvich and inquired about the

14  due process procedures that applied to the Keyhea process.  Defendant Jackizvich informed Plaintiff

15  that he had no rights to any assistance and directed that Plaintiff be returned to his cell.  (Id.)

16      On April 5, 2006, Plaintiff became aware that the order that he be involuntarily medicated

17  had expired on April 1, 2006.  Plaintiff showed the expiration notice to Defendant Ybarra and was

18  informed that the involuntary medication order had been renewed.  (Id. at 3.11.)

19      On April 6, 2006, Defendant Huang admitted that there had been a mistake in providing

20  Plaintiff with antipsychotic medication upon his arrival at CTC and involuntarily medicating

21  Plaintiff.  Defendant Huang stated that he had attempted to convince Defendant Berkson to

22  discontinue the involuntary medication of Plaintiff because he was of the opinion that Plaintiff was

23  not suffering from mental illness.  (Id. at 3.15.)  Defendant Huang believed that Defendant Berkson

24  wanted to teach Plaintiff a lesson by subjecting him to involuntary medication.  Defendant Berkson

25  reviewed Plaintiff's medical file and was aware that Plaintiff was not on antipsychotic medication

26  prior to arriving at CSATF.  Defendant Berkson ordered Plaintiff to be placed in five point restraints

27  to punish Plaintiff knowing that Plaintiff was being involuntarily medicated by mistake.  Defendant

28  Berkson authored a false report stating that Plaintiff threatened to fight medical personnel if they

1  attempted to administer medication involuntarily.  (<u>Id.</u> at 3.16.)

2      On April 7, 2006, Plaintiff informed Nurse Gauthier that his involuntary medication order

3  had expired and requested to see Defendant Allison.  (<u>Id.</u> at 3.11.) Defendant Allison listened to

4  Plaintiff's grievance and informed Plaintiff that she would investigate the matter.  Plaintiff received

5  a note from Defendant Allison stating that Plaintiff was under a temporary order to be involuntarily

6  medicated and was required to take the medication.  (<u>Id.</u> at 3.12.)

7      On April 13, 2006, Plaintiff received a stack of documents and upon reading them discovered

8  that no temporary order had been issued by the judge.  Plaintiff requested that Defendant Clement

9  provide Defendant Tarter's contact information and he refused, stating that the information was

10  confidential.  (<u>Id.</u> at 3.12.)  Plaintiff asked Defendant Clement for a copy of the order that authorized

11  the involuntary administration of medication beyond the temporary order that expired on April 12,

12  2006.  Defendant Clement stated that there was no order and none was needed.  (<u>Id.</u>)

13      On April 14, 2006, Plaintiff refused to take his medication and Defendant Wang threatened

14  to administer a higher dose of medication and place Plaintiff in five point restraints for two days if

15  he continued to refuse to take the medication orally.  Plaintiff stated that he would take the

16  medication if he saw a copy of the order authorizing the involuntary administration of antipsychotic

17  medication. On April 15, 2006, Plaintiff was provided with a letter from Defendant Clement stating

18  that the Court had issued an order to involuntarily medicate Plaintiff.  On April 17, 2006, an order

19  issued authorizing Defendants to involuntarily medicate Plaintiff.  (<u>Id.</u> at 3.13.)  On May 2, 2006,

20  Plaintiff was transferred to Kern Valley State Prison.[1]  (<u>Id.</u> at 3.16.)

21      Plaintiff alleges that Defendants Berkson, Wang, Huang, and Clement involuntarily

22  medicated Plaintiff after the order terminated to punish Plaintiff for attempting to use medical staff

23  to assist him in problem solving in violation of the Fourteenth, First, and Eighth Amendments.  (<u>Id.</u>

24  at 3.23.)

25      <u>Claim Five</u>

26

27      [1]The remainder of Plaintiff's allegations refer to his claims against officials at Kern Valley State Prison.
28  These allegations will not be set forth, other than those claims that apply to Defendant Tarter, as they violate Rule 18 and cannot proceed in this action.

Defendant Lemoy was instructed by another nurse that all Plaintiff's extremities were to be released every two hours while in the five point restraints to allow the blood to circulate.  Defendant Lemoy refused to release Plaintiff's arms and legs every two hours.  When placing the cuffs back on Plaintiff, Defendant Lemoy placed them extra tight.  At one point Defendant Lemoy came into the room and began shaking Plaintiff's extremities causing him to pass out from the pain.  (Id. at 3.8.)  Defendant Lemoy refused to release Plaintiff's extremities for exercise in violation of the Eighth Amendment.  (Id. at 3.23.)

Claim Six

Defendants Idell and Key administered an extra high dose of antipsychotic drugs as punishment after medical staff issued instructions that Plaintiff was not required to be medicated in violation of due process, and the Eighth Amendment.  (Id.)

Claim Seven

The order issued on April 17, 2006, included a stipulation by Defendant Tarter that Plaintiff agreed to waive his right to notice of the petition pending determination of the hearing.  Plaintiff alleges that Defendant Tarter was not retained by Plaintiff or appointed by the Office of the Administrative Law Judge to act as Plaintiff's advocate.  Plaintiff claims that Defendant Tarter did not review his medical records or confer with Plaintiff prior to waiving his right to oppose the order.  Plaintiff alleges that Defendant Tarter conspired with prison officials to involuntarily medicate Plaintiff in violation of his due process rights.  (Id. at 3.14.)

On May 24, 2006, Defendant Tarter came to see Plaintiff at Kern Valley State Prison.  Defendant Tarter attempted to persuade Plaintiff to be involuntarily medicated for 180 days, informing Plaintiff that the judge would grant the petition anyway.  (Id. at 3.20.)  Defendant Tarter informed Plaintiff that the hearing would be postponed to July 7, 2006, to allow an independent psychiatrist to be appointed by the court to evaluate Plaintiff.  (Id. at 3.21.)

On May 24, 2011, Defendants Tarter and Idell had conspired together and  requested that the Administrative Law Judge sign a proposed order to extend the interim involuntary medication order beyond the twenty three days previously authorized.  Defendant Idell and Tarter continued to fabricate documents to attempt to justify Plaintiff being involuntarily medicated beyond the twenty

1  three days.  (Id.)  Defendant Tarter violated the Sixth and Fourteenth Amendments by failing to act

2  as an advocate and allowing Plaintiff to be involuntarily medicated and conspired with CDCR

3  defendants to coverup the involuntary medication.  (Id. at 3.25.)

4        **C.**    **Legal Standards**

5           **1.**    **Linkage Requirement**

6        Under section 1983, Plaintiff must demonstrate that each defendant personally participated

7  in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires

8  the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S. Ct.

9  at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  "[A] complaint [that]

10  pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line

11  between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting

12  Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations

13  contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 129

14  S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere

15  conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

16           **2.**    **First Amendment**

17           **a.**    **Retaliation**

18        A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation

19  under section 1983.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  A viable claim of

20  retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a

21  state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

22  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

23  (5) the action did not reasonable advance a legitimate correctional goal."  Rhodes v. Robinson, 408

24  F.3d 559, 567 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

25           **b.**    **Access to the Courts**

26        Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518

27  U.S. 343, 346 (1996); Hebbe v. Pliler, 611 F.3d 1202, 1206 (9th Cir. 2010).  The right is merely the

28  right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal

1   appeals, habeas petitions, and civil rights actions.  Lewis, 518 U.S. at 354.  To bring a claim, the

2   plaintiff must have suffered an actual injury by being shut out of court.  Christopher v. Harbury, 536

3   U.S. 403, 415 (2002); Lewis, 518 U.S. at 351.

4               **3.     Sixth Amendment**

5       Plaintiff alleges that he was denied counsel at the hearing to determine if he should be

6   involuntarily medicated.  The Sixth Amendment states in relevant part that "[i]n all criminal

7   prosecutions the accused" has a right to "have the Assistance of Counsel for his defence."  Plaintiff's

8   claims do not implicate a criminal prosecution and are appropriately addressed under the Due

9   Process Clause.

10              **4.     Eighth Amendment**

11      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

12  must show "deliberate indifference to serious medical needs."'  Jett v. Penner, 439 F.3d 1091, 1096

13  (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  Deliberate indifference is

14  shown where the official is aware of a serious medical need and fails to adequately respond.

15  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1018 (9th Cir. 2010).  "Deliberate indifference

16  is a high legal standard."  Simmons, 609 F.3d at; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.

17  2004).  The prison official must be aware of facts from which he could make an inference that "a

18  substantial risk of serious harm exists" and he must make the inference.  Farmer v. Brennan, 511

19  U.S. 825, 837 (1994).

20              **5.     Fourteenth Amendment Due Process**

21      The Due Process Clause protects against the deprivation of liberty without due process of law.

22  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  In order to state a cause of action for a deprivation

23  of due process, a plaintiff must first identify a liberty interest for which the protection is sought.  Id.

24  The Due Process Clause does not confer a liberty interest in freedom from state action taken within

25  a prisoner's imposed sentence.  Sandin v. Conner, 515 U.S. 472, 480 (1995).  However, a state may

26  "create liberty interests which are protected by the Due Process Clause."  Sandin, 515 U.S. at 483-84.

27  A prisoner has a liberty interest protected by the Due Process Clause only where the restraint

28  "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

1    life." <u>Keenan v. Hall</u>, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting <u>Sandin</u>, 515 U.S. at 484).

2                              **a.      Involuntary Medication**

3          Both California law and the Due Process Clause confer upon an inmate the right to be free

4    from the arbitrary administration of antipsychotic medication. <u>Washington v. Harper</u>, 494 U.S. 210,

5    221 (1990). "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious

6    mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others

7    and the treatment is in the inmate's medical interest." <u>Washington</u>, 494 U.S. at 227. Due process is

8    satisfied when the decision to medicate an inmate against his will is facilitated by an administrative

9    review by medical personnel not involved in the inmate's treatment. <u>Id.</u> at 233. Due process does

10   not require a judicial decisionmaker. <u>Id.</u> Nor does it require appointment of counsel, the inmate is

11   provided with sufficient protection by having a lay advisor who understands the psychiatric issues

12   involved. <u>Id.</u> at 236.

13                          **b.      Placement in Administrative Segregation**

14         The Due Process Clause does not "create a liberty interest in freedom from administrative

15   segregation." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1091 (9th Cir. 1985), <u>abrogated in part on other</u>

16   <u>grounds by</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). Administrative segregation is the type of

17   confinement that should be reasonably anticipated by inmates at some point in their incarceration.

18   <u>Toussaint</u>, 801 F.2d at 1091 (quoting <u>Hewitt v. Helms</u>, 459 U.S.460, 468 (1983)). The Ninth Circuit

19   has concluded that prisoners have no liberty interest in remaining free from administrative segregation

20   or solitary confinement. <u>See</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir.1997).

21                              **6.      Rule 18**

22         Plaintiff may not pursue multiple, unrelated claims in this action. Pursuant to the Federal

23   Rules of Civil Procedure, [a] party asserting a claim, counterclaim, crossclaim, or third-party claim

24   may join, as independent or alternate claims, as many claims as it has against an opposing party."

25   Fed. R. Civ. P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against

26   Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims

27   against different defendants belong in different suits, not only to prevent the sort of morass [a multiple

28   claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing

1  fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any

2  prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." <u>George v. Smith</u>,

3  507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff will not be permitted to proceed in this action with a

4  "mishmash of a complaint." <u>George</u>, 507 F.3d at 607.

5  ### 7.   **Injunctive Relief**

6  For each form of relief sought in federal court, Plaintiff must establish standing.  <u>Mayfield v.</u>

7  <u>United States</u>, 599 F.3d 964, 969 (9th Cir. 2010), *cert.denied*, 131 S. Ct. 503 (2010).  This requires

8  Plaintiff to "show that he is under threat of suffering 'injury in fact' that is concrete and

9  particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be

10  fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial

11  decision will prevent or redress the injury." <u>Summers v. Earth Island Institute</u>, 129 S. Ct. 1142, 1149

12  (2009) (citation omitted); <u>Mayfield</u>, 599 F.3d at 969 (citation omitted).

13  In addition, any award of equitable relief is governed by the Prison Litigation Reform Act,

14  which provides in relevant part, "Prospective relief in any civil action with respect to prison

15  conditions shall extend no further than necessary to correct the violation of the Federal right of a

16  particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the

17  court finds that such relief is narrowly drawn, extends no further than necessary to correct the

18  violation of the Federal right, and is the least intrusive means necessary to correct the violation of the

19  Federal right." 18 U.S.C. § 3626(a)(1)(A).

20  ### D.   **Discussion**

21  ### 1.   **Claim One**

22  #### a.   **Due Process**

23  Plaintiff claims that he was told by officials at SVSP that he would not be placed in ASU

24  because Defendant Johnson worked at SATF.  Plaintiff alleges that he was placed in administrative

25  segregation for an offense of which he had been acquitted.  However, while Plaintiff fails to identify

26  if Defendant Johnson was the officer involved in the incident of which he was aquitted, it appears that

27  there had been a previous incident with Defendant Johnson which was why she feared for her safety.

28  Plaintiff has not established a liberty interest in based upon being confined in ASU and his allegations

1  fail to state a cognizable claim that his due process rights were violated.

2       **b.**  **Retaliation**

3     Plaintiff alleges that he was placed in the ASU in retaliation for seeking access to the law

4  library and his court ordered phone call, however he fails to link any defendant to any factual

5  allegations sufficient to state a cognizable claim. Jones, 297 F.3d at 934. Although Plaintiff alleges

6  that Defendant Mendes retaliated against him by placing him in ASU, there are no factual allegations

7  sufficient to link Defendant Mendes to the decision to place Plaintiff in ASU.

8      **2.**  **Claim Two**

9     Plaintiff's allegations that Defendants Jordnt and Bardonnex withheld his legal documents in

10  retaliation for Plaintiff reporting their misconduct and causing his habeas petition to be terminated

11  is sufficient to state a cognizable access to the court and retaliation claim. Lewis, 518 U.S. at 354.

12      **3.**  **Claim Three**

13      **a.**  **Deliberate Indifference**

14     The circumstances, nature, and duration of the deprivations are critical in determining whether

15  the conditions complained of are grave enough to form the basis of a viable Eighth Amendment

16  claim." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). Plaintiff's allegations that Defendant

17  Phillips and Hopkins left him sitting in the rain for fifteen minutes do not rise to the level of "the

18  wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

19     Plaintiff has failed to allege facts to demonstrate that Defendants Torcia and Wang were aware

20  of a significant risk of harm to Plaintiff and knowingly administered antipsychotic mediation alleging

21  that it was pain medication. According to Plaintiff's complaint he had been referred to the CTC after

22  the psychiatrist evaluated him and determined that he was hearing voices telling him to bite.

23  Plaintiff's complaint is unclear regarding who administered the antipsychotic drugs, however, the

24  administration of antipsychotic drugs in an attempt to treat Plaintiff's deteriorating mental condition

25  would not constitute cruel and unusual punishment in violation of the Eighth Amendment.

26      **b.**  **Due Process**

27     Plaintiff's claim that he was given antipsychotic medication that was falsely represented as

28  pain medication fails to state a cognizable claim. While Plaintiff states that he was told by Defendant

1  Torcia that she would check with the doctor and get his medication, Plaintiff fails to identify who

2  provided Plaintiff with the medication and made the false statement.

3    **4.    Claim Four**

4        **a.    First Amendment**

5        Plaintiff alleges violations of the First Amendment, however Plaintiff's right to refuse

6  medication is based in other amendments, not the First Amendment.  To the extent that Plaintiff is

7  alleging retaliation for his attempts to gain access to the law library and telephone, he fails to allege

8  any facts to state a plausible claim that any defendant medicated Plaintiff based on protected activity.

9

10        **b.    Deliberate Indifference**

11        Plaintiff's allegations fail to state a claim against Defendants Berkson, Wang, Huang, and

12  Clement for violation of the Eighth Amendment.   Initially, Plaintiff fails to set forth factual

13  allegations to show that a substantial risk of harm existed from the administration of antipsychotic

14  medication.  Farmer, 511 U.S. at 834.   Additionally, Plaintiff's factual allegations show that

15  Defendants Berkson and Huang had a difference of opinion in how Plaintiff should be treated that

16  does not amount to deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Nor

17  does Plaintiff's difference of opinion with prison medical authorities as to proper treatment give rise

18  to a claim.  Franklin v. Oregon, 662 F.2d 1337, 1355 (9th Cir. 1981);  Mayfield v. Craven, 433 F.2d

19  873, 874 (9th Cir. 1970).

20        Plaintiff's attempt to show deliberate indifference because he was not on medication when

21  he arrived at SATF fails.  The facts as alleged by Plaintiff show that he was under significant stress

22  from not receiving his legal property and the alleged retaliation after he began attempting to gain

23  access to the law library and court ordered phone access.  This caused Plaintiff to request a psychiatric

24  consult which resulted in the determination that he was hearing voices telling him to bite.  The fact

25  that the decision was made to involuntarily administer antipsychotic medication due to the change

26  in Plaintiff's mental health does not state a plausible claim that the intent was to punish Plaintiff.

27  Iqbal, 129 S. Ct. at 1949.

28        While Plaintiff alleges that on March 22, 2006, he was placed in five point restraints and

14

administered additional medication as punishment for failing to take his medication orally, he fails to link the incident to any named defendant.  Nor do Plaintiff's remaining claims allege facts sufficient to show that any defendant was aware of a significant risk of harm to Plaintiff and failed to adequately respond.  <u>Simmons</u>, 609 F.3d at 1018.

Finally, Plaintiff sets forth conditions that he alleges constitute cruel and unusual punishment while he was confined in the mental health unit.  Plaintiff does not link any named defendant to the conditions of which he complains and, therefore, fails to state a cognizable claim.

### c.   **Due Process**

Plaintiff's allegations are sufficient to state a cognizable claim that Defendants Wang, Berkson, and Clement involuntarily administered antipsychotic medication in violation of due process.  However, Plaintiff does not set forth factual allegations sufficient to link any other named defendant to the decision to medicate Plaintiff.

To the extent that Plaintiff is alleging due process violations due to lack of process in the Keyhea hearing, he has failed to link any defendant to the hearing or the decision to issue the order to involuntary medicate Plaintiff.  Plaintiff's allegations that he asked Defendants Clement, Jackizvich, and others about his rights at the hearing fail to state a cognizable claim.

### 5.   **Claim Five**

Plaintiff's allegations that Defendant Lemoy failed to follow proper procedure and release his extremities while he was in five point restraints are sufficient to state a cognizable claim for deliberate indifference in violation of the Eighth Amendment.

### 6.   **Claim Six**

Since Plaintiff's claims are based upon alleged violations at KVSP, and are improperly joined in this action, the Court declines to set forth the allegations in Plaintiff's sixth claim.

### 7.   **Claim Seven**

Plaintiff alleges that Defendant Tarter waived his right to a hearing without being appointed to act for him by the court or being retained by him.  Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." <u>Jensen v. Lane County</u>, 222 F.3d 570, 574 (9th Cir. 2000).

1  Plaintiff alleges that Defendant Tarter waived his rights when she was not his attorney or appointed

2  by the court.  If so she would be acting as a private person.  "The United States Constitution protects

3  individual rights only from *government* action, not from *private* action."  Single Moms, Inc. v.

4  Montana Power Co., 331 F.3d 743, 746 (9th Cir. 2003) (emphasis in original).  However, even if

5  Defendant Tarter was appointed to represent Plaintiff, the complaint fails to state a cognizable claim,.

6  It is well established that court appointed attorneys are not state actors.  Polk v. Dodson, 454

7  R.S. 312, 325 (1981) (a court appointed attorney representing an indigent client does not act under

8  color of state law when performing the traditional functions of a lawyer); Miranda v. Clark County

9  of Nevada, 319 F.3d 465, 468 (9th Cir. 2003) (upholding dismissal of complaint on basis that public

10  defender was not acting on behalf of county for purposes of section 1983 in representing plaintiff's

11  interests); Hall v. Quillen, 631 F.2d 1154, 1156 (4th Cir. 1980) (court appointed attorney representing

12  plaintiff in involuntary commitment proceedings is not a state actor); Harkins v. Eldredge, 505 F.2d

13  802, 805 (8th Cir. 1974) (the conduct of an attorney, whether retained or appointed, does not

14  constitute action under color of state law).

15  State action could be found where a private individual conspires with a state actor.  Franklin

16  v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).  A conspiracy claim brought under section 1983 requires

17  proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin, 312 F.3d

18  at 441 (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th

19  Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450

20  F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121,

21  1126 (9th Cir. 1989)).

22  Although, for pleading purposes, the Court accepts as true the allegations in the complaint,

23  the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . .

24  . ."  Twombly, 127 S. Ct. at 1965 (citations omitted).  A plaintiff must set forth "the grounds of his

25  entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation

26  of the elements of a cause of action . . . ."  Id. at 1964-65 (internal quotations and citations omitted).

27  Plaintiff has not alleged any facts supporting the existence of a conspiracy between Defendant Tarter

28  and any other individual.  Plaintiff has failed to state a cognizable claim against Defendant Tarter.

### 8.    **Injunctive Relief**

Plaintiff seeks injunctive relief requiring CDCR Mental Health Staff to provide inmates housed in mental health beds for more than seventy two hours access to exercise yard activities, day room and group therapy, means to brush their teeth, necessary utensils to eat a meal, shower shoes, and beds for disabled inmates.  Additionally, Plaintiff seeks an order directing CDCR to provide inmates who are being subjected to involuntary medication an advocate attorney, directing that video and audio recording equipment be placed in each ASU, and an order directing Defendants to expunge the July 16, 2004 rule violation report and all involuntary medication documents from his central file.

Plaintiff's complaint does not state a cognizable claim arising out of lack of yard access, therapy, hygiene supplies, eating utensils, etc.  Plaintiff may not receive injunctive relief in the absence of a viable claim based on the relief he is seeking and the request for system wide relief extends further than necessary to correct the violation of Plaintiff's rights.[2]   18 U.S.C. § 3626(a)(1)(A);  Summers, 129 S. Ct.at, 1149-50;  Price v. City of Stockton, 390 F.3d 1105, 1112 (9th Cir. 2004).  Accordingly, Plaintiff's claims for injunctive relief are not cognizable.

### 9.    **Amended Complaint**

If Plaintiff elects to amend his complaint he is advised of the following requirements under the Federal Rules of Civil Procedure regarding the general formatting of his complaint.  Plaintiff's complaint must contain "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." Federal Rule of Civil Procedure 8(a)(2).  Plaintiff's amended complaint is neither short nor plain.  Plaintiff's amended complaint is long and contains multiple unrelated incidents.

The function of the complaint is not to list every single fact relating to Plaintiff's claims.  "Each allegation must be simple, concise, and direct."  Federal Rule of Civil Procedure 8(d)(1).  A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Federal Rule of Civil Procedure 10(b).  Additionally, Plaintiff's amended complaint must comply with Rule 18 and may only contained related claims.

---

[2] In addition, CDCR itself is immune from suit.  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

1    **III.    Conclusion and Order**

2          Plaintiff's complaint states a cognizable claim against Defendants Jordnt and Bardonnex for

3    retaliation and denial of access to the court in violation of the First Amendment; Defendants Berkson,

4    Wang, and Clement for involuntarily medicating Plaintiff in violation of due process; and Defendant

5    Lemoy for deliberate indifference in violation of the Eighth Amendment; but does not state any other

6    claims for relief under section 1983.  The Court will provide Plaintiff with the opportunity to file an

7    amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809

8    F.2d 1446, 1448-49 (9th Cir. 1987).

9          If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only

10   against one of the claims found to be cognizable in this order, Plaintiff may so notify the Court in

11   writing.  The other defendants and claims will then be dismissed.

12         If Plaintiff elects to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but

13   must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or

14   other federal rights.  Iqbal,129 S. Ct. at 1948-49; Jones, 297 F.3d at 934.  Although accepted as true,

15   the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . .

16   . ."  Twombly, 550 U.S. at 555 (citations omitted).  The mere possibility of misconduct is insufficient

17   to state a claim.  Iqbal, 129 S. Ct. at 1950.  Further, Plaintiff may not change the nature of this suit

18   by adding new, unrelated claims in his amended complaint.  George, 507 F.3d at 607 (no "buckshot"

19   complaints).

20         Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc.,

21   114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must

22   be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

23   Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an

24   amended complaint are waived."  King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644

25   F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

26         Based on the foregoing, it is HEREBY ORDERED that:

27   1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

28   2.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

18

1           a.      File an amended complaint curing the deficiencies identified by the Court in

2                  this order, or

3           b.      Notify the Court in writing that he does not wish to file an amended complaint

4                  and inform the Court which of the following unrelated claims he wishes to

5                  proceed with in this action;

6                 1.      Defendants Jordnt and Bardonnex for retaliation and denial of access

7                      to the court in violation of the First Amendment;

8                 2.      Defendants Berkson, Wang, and Clement for involuntarily medicating

9                      Plaintiff in violation of due process; or

10                 3.      Defendant Lemoy for deliberate indifference in violation of the Eighth

11                      Amendment; and

12     3.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to

13          obey a court order.

14

15   IT IS SO ORDERED.

16   **Dated:   August 19, 2011**              **/s/ Sandra M. Snyder**

                                          UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28