**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILL MOSES PALMER, III,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JEANNE WOODFORD, et al.,<br><br>　　　　　Defendants. | Case No.: 1:06-cv-00512-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING (1) PLAINTIFF'S MOTION FOR COURT ORDER TO COMPEL DISCOVERY EVIDENCE IN SUPPORT OF PLAINTIFF'S OPPOSITION; (2) PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE;  AND (3) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 138, 142, 150)<br><br>THIRTY-DAY DEADLINE |

**I.     Introduction**

Plaintiff Will Moses Palmer, III, ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's second amended complaint against Defendants Jordnt and Bardonnex for retaliation and denial of access to the courts in violation of the First Amendment to the United States Constitution.  (ECF Nos. 111, 112, 122.)

1

On January 7, 2014, Defendants filed a motion for summary judgment on the grounds that they did not violate Plaintiff's First Amendment rights and that they are entitled to qualified immunity.[1] (ECF No. 138.) Plaintiff opposed the motion on February 13, 2014. (ECF Nos. 141, 143.) Plaintiff also filed a motion requesting judicial notice. (ECF No. 142.) Defendants filed a reply on March 14, 2014. (ECF No. 148.)

Also pending before the Court is Plaintiff's motion for a court order to compel discovery evidence in support of his opposition, which was filed on March 28, 2014. (ECF No. 150.)

The motions are deemed submitted. Local Rule 230(l).

## II. Plaintiff's Motion for Court Order to Compel Discovery Evidence

Plaintiff moves to compel Defendants to produce certain documents and photographs pursuant to Federal Rule of Civil Procedure 37. Plaintiff claims that Defendants have failed to produce authentic copies of the following documents and photographs:

1. CDCR Form 143 Property Transfer Receipt prepared by California Correctional Institution Prison officials on December 7, 2005;
2. Copy of the Receiving and Release Unit's Property Log;
3. Training manual for Prison Law Library Officers;
4. The CDCR form 1083 Property Inventory slip, signed by defendant Bardonnex on the date and at the specific time Plaintiff's Legal property (that was sent from CCI on 12-7-2005) was issued to him;
5. The list of all books that were contained in the E facility Building 1 ASU law library;
6. Each request that was submitted by the Plaintiff for legal material from the Law Library.
7. A photograph of the E facility building 1 law library;
8. A photograph of the B facility law library at the California State Prison Los Angeles County.

(ECF No. 150, pp. 1-2.)

Although not entirely clear, Plaintiff's request for documents appears to be two-fold: (1) a motion compelling defendants to produce documents in response to a document request served on March 24, 2012; and (2) a motion compelling defendants to produce copies of exhibits Plaintiff has relied upon to support his opposition to the motion for summary and to which Defendants have

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 138-1); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

2

objected as unauthenticated. Plaintiff does not specify which documents were requested in discovery and which documents are exhibits.

Nonetheless, the discovery deadline in this matter expired on August 27, 2013, Defendants filed their motion for summary judgment on January 7, 2014, and Plaintiff moved for additional discovery on March 28, 2014. Given the timing of the instant motion, the Court construes Plaintiff's request as one to defer consideration of the motion for summary judgment and to allow Plaintiff to obtain discovery pursuant to Federal Rule of Civil Procedure 56(d).

Rule 56(d) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other appropriate order."

As noted above, the deadline to complete all discovery in this action, with the exception of Plaintiff's deposition, was August 27, 2012. (ECF Nos. 81, 123.) Plaintiff reports that he served Defendants with interrogatories and a request for production of documents on March 24, 2012. When he did not receive a response, he filed a motion to compel. Defendants opposed the motion to compel and served responses to Plaintiff's interrogatories on June 6, 2012. Defendants did not produce any documents, but promised to produce some documents when located. (ECF No. 150, p. 3.)

According to the docket in this matter, Plaintiff filed a motion to compel Defendants to produce documents responsive to his discovery requests on May 15, 2012. (ECF No. 104.) Defendants opposed the motion, contending that they had served responses within the time period permitted by the Court. (ECF No. 108.) On June 8, 2012, the Court denied Plaintiff's motion to compel and instructed Defendants to re-serve their discovery responses with fourteen days. (ECF No. 109.)

If Plaintiff was dissatisfied with Defendants' response, or if Defendants failed to respond, Plaintiff's recourse was to file a motion to compel on or before August 27, 2013, which he failed to do. The Court notes that on October 11, 2013, Plaintiff filed a motion to modify the discovery deadline to allow Defendants to produce certain documents or for Plaintiff to file a motion to compel. (ECF No. 129.) On November 22, 2013, the Court denied the motion, finding that Plaintiff had not

demonstrated the requisite diligence to modify the Discovery and Scheduling Order.  (ECF No. 136.) Plaintiff does not explain why he delayed nearly four additional months before filing the instant motion seeking discovery.

At this stage in the proceedings, discovery has been closed for more than ten months and Plaintiff may not seek further discovery or request a continuance of Defendants' motion for summary judgment based on a purported need for further discovery.  Accordingly, the Court will recommend that Plaintiff's Rule 56(d) motion, filed on March 28, 2014, be denied.

### III.     Plaintiff's Request for Judicial Notice

In conjunction with his opposition to Defendants' motion for summary judgment, Plaintiff filed a request for judicial notice pursuant to Federal Rule of Evidence 201.  Plaintiff requests that the Court take notice of the following:

1. The court docket in Palmer v. Lamarque, Case No. 2:00-cv-06982-JFW-JC;
2. The motion to set aside filed in Monterey County Superior Court case People v. Palmer, No. MS042730A;
3. The request for clarification/reconsideration of court order for prison officials to provide the plaintiff with his legal property, including law books, and typewriter in cell in People v. Palmer, No. MS042730A;
4. The order directing Plaintiff to re-file his Objections to the Magistrate's Report and Recommendation in Palmer v. Lamarque, Case No. 2:00-cv-06982-JFW-JC;
5. The Objection to the Report and Recommendation cover sheet bearing the stamp "**NOT TO BE FILED BUT INSTEAD REJECTED AND RETURNED**" in Palmer v. Lamarque, Case No. 2:00-cv-06982-JFW-JC.

(ECF No. 142, pp. 1-2.)

Defendants also rely on the docket in Palmer v. Lamarque, Case No. 2:00-c-v-06982, in support of their motion for summary judgment.  (ECF No. 138-3, Defs' Ex. B.)

The Court properly may take judicial notice of court records in other cases.  United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).  Given Defendants' lack of objection and their corresponding reliance on certain court records, the Court will recommend that Plaintiff's request for

4

judicial notice be granted.  However, the Court will not take judicial notice of any findings of fact in those cases through judicial notice.  "[J]udicial notice of findings of fact from another case exceeds the limits of Rule 201."  Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003) (overruled in part on other grounds, Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014)) (citing M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983)).

### IV.     Defendants' Motion for Summary Judgment

#### A. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

In arriving at this order, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

1 objections, and other papers filed by the parties. Omission of reference to an argument, document,
2 paper, or objection is not to be construed to the effect that this Court did not consider the argument,
3 document, paper, or objection. This Court thoroughly reviewed and considered the evidence it
4 deemed admissible, material, and appropriate.

### B. Summary of Relevant Allegations in Plaintiff's Second Amended Complaint

6 On December 7, 2005, Plaintiff was placed in the administrative segregation unit ("ASU").
7 (Sec. Am. Compl. ¶ 1, ECF No. 103.) Plaintiff informed Property Officer Lopez and Defendants
8 Jordnt and Bardonnex of his pending court cases and his need to access the law library and his legal
9 property. (Id. at ¶ 3.) Plaintiff had obtained a court order for law library access and telephone calls to
10 a private investigator. (Id. at ¶ 4.) Plaintiff began to complain that he was not given adequate law
11 library access or his court ordered phone calls. (Id. at ¶ 5.) Plaintiff alleges that in retaliation for these
12 complaints, Property Officer Lopez and Defendant Jordnt refused to issue Plaintiff his legal property
13 that was being stored in the receiving and release unit. (Id. at ¶ 6.) Plaintiff was led to believe that
14 none of his property had arrived from the sending institution. (Id. at ¶ 7.) Defendant Jordnt and
15 Property Officer Lopez informed Plaintiff that they had searched and were not able to find his
16 property, and that the property had not been received. (Id. at ¶ 9.) Defendants Jordnt and Bardonnex
17 denied Plaintiff access to his legal materials to prepare for trial in an upcoming civil matter and
18 pending criminal matter. Defendant Bardonnex destroyed Plaintiff's requests for copying. (Id. at ¶
19 10.)

20 Plaintiff contacted the court and as a result, an order issued directing the Attorney General to
21 contact prison officials regarding Plaintiff's legal property. (Id. at ¶ 12.) Defendant Bardonnex and C.
22 Munoz were directed to provide Plaintiff with his legal property. After receiving his property,
23 Plaintiff noticed that the box which contained his television set was wet on the bottom and a cable
24 screw had been broken. (Id. at ¶ 13.) Defendant Bardonnex stood four to five feet away from Plaintiff
25 and opened two of Plaintiff's five boxes of legal documents. (Id. at ¶ 14.) Plaintiff was instructed to
26 tell Defendant Bardonnex what he needed. Plaintiff began selecting folders with case numbers 4213
27 and 6982, however after going through only two of the boxes, Defendant Bardonnex informed
28

1  Plaintiff that it was time for him to go home, leaving Plaintiff without the documents he needed. (Id. at
2  ¶ 15.)
3        Plaintiff complained to the court a second time, and an order issued directing the prison to
4  provide Plaintiff with all of his legal property and typewriter. (Id. at ¶ 16.) On seeing Plaintiff's
5  typewriter in his cell, C. Munoz became irate and demanded that Plaintiff turn over his typewriter.
6  Plaintiff informed C. Munoz that he had a court order for the typewriter and a right to refuse the
7  unlawful instruction to give it up. (Id. at ¶ 17.) After Plaintiff was threatened with pepper spray and
8  cell extraction, C. Munoz informed Plaintiff that he would take Plaintiff's typewriter while he
9  showered and it would end up like Plaintiff's television. (Id. at ¶ 18.) As a result of not having his
10 legal paperwork and being denied access to the law library, Plaintiff had his habeas proceedings
11 dismissed, was unable to effectively prosecute his civil proceedings, and informed the criminal trial
12 judge that he was pleading no contest to the criminal charges as a result of being harassed and
13 retaliated against by defendants. (Id. at ¶ 19.)

**C. Statement of Undisputed Material Facts ("UMF")**

15   1.    At all times relevant to the action, Plaintiff was in the lawful custody of the California
16 Department of Corrections and Rehabilitation.
17   2.    According to the Court's Public Access to Court Electronic Records (PACER)
18 database, Plaintiff has filed nineteen civil matters in the last ten years, of which seventeen have been
19 closed. (Defs.' Ex. A.)
20   3.    In the present case, Plaintiff's in forma pauperis status was revoked in March 2010 by
21 Chief Judge John M. Roll because Plaintiff was found to have had 3 strikes, but it was subsequently
22 reinstated in August 2011, following Plaintiff's motion for reconsideration. The court found that one
23 of the "strikes" had been based on Plaintiff choosing not to file an amended complaint (even though he
24 had been given leave to do so), but rather, to file a voluntary notice of dismissal of the action, thus not
25 counting as a prior qualifying strike under section 1915(g) for purposes of supporting revocation of in
26 forma pauperis status. (ECF Nos. 51, 64.)

7

4. During the time period relevant to this action, Defendants Jordnt and Bardonnex worked as Correctional Officers in Administrative Segregation (Ad Seg) at California Substance Abuse Treatment Facility (SATF). (Jordnt Dec. ¶ 1; Bardonnex Dec. ¶ 1.)

5. Plaintiff transferred to Ad Seg at SATF in December 2005, and only had limited property that he had brought with him from the California Correctional Institution in Tehachapi (CCI). (SAC, pp. 3-4.)

6. Plaintiff claims he requested his legal property and was told that his property had not arrived from CCI. (SAC at 3:1-7.)

7. Plaintiff alleges that the Ad Seg building he was housed in did not have an adequate law library, and that he was not receiving his confidential telephone calls with a court-appointed investigator. (SAC at 1:16-17.)

8. Plaintiff claims that when he complained about this, in retaliation, Officers Lopez and Jordnt allegedly refused to issue Plaintiff's legal property to him. (SAC at 1:20-22.)

9. Plaintiff also claims that Officer Bardonnex failed to make unspecified legal copies for him, and on one occasion, did not complete going through five boxes of legal property with Plaintiff because Officer Bardonnex's shift had ended. (SAC at 2:13-15, 5:1-9.)

10. Plaintiff alleges that Defendants did not provide him with his legal property even though Plaintiff had urgently needed to submit a document to the court, resulting in his petition for writ of habeas corpus, Palmer v. Lamarque, case no. 2:00-cv-06982-JFW-JC, being dismissed. (SAC at 5:25-26; Defs.' Ex. B.)

11. The Central District Court of California docket for Palmer v. Lamarque, case no. 2:00-cv-06982-JFW-JC, clearly shows that this action was terminated on June 30, 2004 (Palmer v. Lamarque, ECF No. 144)—almost five months before Plaintiff transferred to SATF or had any interaction with Officers Jordnt and Bardonnex. (Defs' Ex. B.)

12. On November 2, 2005—which is prior to Plaintiff's transfer to SATF—the Central District Court in Palmer v. Lamarque, case no. 2:00-cv-06982-JFW-JC, had already issued an order for Plaintiff to file with the Court a copy of his objections which he claims to have been rejected by the Court. (Defs' Ex. B, ECF No. 169.)

13. The docket for Palmer v. Lamarque, case no. 2:00-c-v-06982-JFW-JC, confirms that even after Plaintiff's petition was terminated in June 2004, for the next six years, Plaintiff submitted no less than fifty pleadings, including requests for reconsideration, requests for evidentiary hearings, motions to disqualify judges, multiple notices of appeals and requests for certificates of appealability, and miscellaneous petitions/motions, which were rejected or denied by the Court. (Defs.' Ex. B, ECF No. 143 to 214.)

14. When Plaintiff transferred to SATF, his legal property was handled by the staff at SATF's Receiving and Releasing (R&R) for in-take, storage and release to Plaintiff.[2] (Jordnt Dec. ¶ 2; Bardonnex Dec. ¶ 2.)

15. Officers Jordnt and Bardonnex had no control over when Plaintiff's legal property arrived at SATF's R&R, how R&R logged, processed and stored Plaintiff's property, or when R&R released the property to Plaintiff.[3] (Jordnt Dec. ¶ 3; Bardonnex Dec. ¶ 3.)

16. Officer Jordnt, who worked as a law library officer in Ad Seg until December 2005, and Officer Bardonnex, who took over as a law library officer in Ad Seg after Officer Jordnt left, were responsible for handling the Ad Seg inmates' legal property after it had been released by SATF's R&R, based on allowable space in Ad Seg.[4] (Jordnt Dec. ¶ 4; Bardonnex Dec. ¶ 4.)

17. Officer Jordnt went to the SATF's R&R to inquire about the status of Plaintiff's legal property, but was told by R&R staff that it had not yet arrived from CCI.[5] (Jordnt Dec. ¶ 5.)

---

[2] Plaintiff asserts that there is a dispute because Defendants stated in their interrogatory responses that it was their duty to retrieve inmates' legal property from R&R. (ECF No. 141, p. 4, Pl's Ex. 4.) Defendants' response does not create a genuine dispute of material fact. The fact at issue does not address retrieval of property from R&R.

[3] Plaintiff asserts that there is a genuine dispute because Defendants' interrogatory responses demonstrated that Defendants had control over inmates' legal property in the ASU. (Pl's Ex. 4.) Defendants' responses do not create a genuine dispute of material fact. The fact at issue relates solely to the logging, processing, storage and release of property in R&R, not in the ASU.

[4] Plaintiff attempts to create a dispute by arguing that Defendants were responsible for retrieving his property from R&R and they went to R&R to get his property, but it was not there. (ECF No. 141, p. 5.) This does not create a genuine dispute regarding Defendants' responsibilities after an inmate's property was released by R&R.

[5] Plaintiff contends that the property inventory sheet, Plaintiff's Exhibit 7, clearly depicts that Plaintiff's property was transferred to SATF on December 7, 2005. Plaintiff has submitted two exhibits marked "7." One exhibit 7, attached to Plaintiff's Declaration, is a 602 complaining about damage to Plaintiff's TV. (ECF No. 143, p. 25.) Defendants object to Plaintiff's Exhibit 7 as not relevant, lacking foundation and not authenticated. Fed. R. Evid. 402, 602, 901. Defendants'

18. Officer Jordnt told Plaintiff that he had searched the log in the R&R unit, as well as the annexes, and that Plaintiff's property was not there and had not been received by SATF. (Jordnt Dec. ¶ 5.)

19. Later, when R&R staff advised that Plaintiff's legal property had arrived at SATF in early January 2006, Officer Bardonnex obtained the documents from R&R for Plaintiff.[6] (Bardonnex Dec. ¶ 7.)

20. Officers Jordnt and Bardonnex were not responsible for, and had no control over, the adequacy of the law library available to Ad Seg inmates at SATF, including the subjects or quality of legal materials, and they could not guarantee the availability of particular legal materials if they had been checked out by other inmates or were not available.[7] (Jordnt Dec. ¶ 6; Bardonnex Dec. ¶ 5.)

21. Officers Jordnt and Bardonnex were not personally responsible for, and had no control over, setting-up the confidential telephone calls Plaintiff was supposed to receive with his court-appointed investigator, because this had to be handled by the SATF litigation office to ensure that the

---

relevance objection to this exhibit is SUSTAINED. At best, Plaintiff's 602 establishes that Plaintiff's TV was transferred with him and working when he arrived at SATF, which is not relevant to his claims regarding his legal property. Further, it does not raise a genuine dispute regarding when or if Plaintiff's legal property was transferred to SATF. The other exhibit 7 submitted by Plaintiff is attached to Plaintiff's Response to the Defendant's Statements of Undisputed Fact and is a CDC 1083 Inmate Property Inventory. (ECF No. 141, p. 35.) This exhibit lacks any signature by Plaintiff or by prison officials. Accordingly, Defendants' foundation and authentication objections to this exhibit are SUSTAINED.

[6] Plaintiff attempts to create a dispute by stating that Northern District Court Judge Susan Illston issued an Order for a telephonic conference in response to Plaintiff's motion for extension of time, which was based on Plaintiff not having his legal property. The order reportedly directed Attorney General Barbara Speigel to contact prison officials and find out where Plaintiff's property was and when it was going to be provided to Plaintiff. After the Attorney General contacted the prison, Defendants issued Plaintiff some of his legal documents, which had been at SATF since December 7, 2005. (ECF No. 141, pp. 5-6.) Plaintiff does not provide any evidence to support his statements regarding the order from Judge Illston and subsequent actions.
  Further, the crux of Plaintiff's complaint is that his remaining legal property was not provided to him by Defendant Jordnt. There is no dispute that Plaintiff had limited property with him when he transferred from CCI to SATF. UMF 5. However, Plaintiff's assertion that his remaining legal property had been transferred to SATF on December 7, 2005, is conclusory and lacks evidentiary support to raise a genuine dispute of material fact. Exhibit 3 to Plaintiff's declaration, a CDC 1083 Inmate Property Inventory (also identified as Exhibit 7 at ECF No. 141), lacks any signature by Plaintiff or prison officials. (ECF No. 143, p. 16.) Exhibit 4 to Plaintiff's declaration, a letter from Chief Deputy Warden L.L. Schulteis of CCI, is dated December 2, 2005, and clearly states that Plaintiff's property "will be delivered to SATF upon your arrival there." (ECF No. 143, p. 19.) It does not state when Plaintiff's property was sent from CCI to SATF.

[7] Plaintiff's reference to the California Code of Regulations does not raise a genuine dispute regarding the responsibilities and authority of CDCR employees Jordnt and Bardonnex. Further, any purported admission that Defendants are responsible for providing Ad Seg inmates with access to the library does not raise a genuine dispute regarding whether or not they were responsible for the *adequacy* of the law library or the availability of materials.

10

calls were in fact authorized by the court, to ascertain the details and conditions of such calls, and to make arrangements for a suitable room, correctional staff coverage, and access to a reliable confidential telephone line.[8] (Jordnt Dec. ¶ 7; Bardonnex Dec. ¶ 6.)

### D. Discussion

Despite receiving notice of the requirements for opposing a motion for summary judgment, Plaintiff did not submit a memorandum of points and authorities. Instead, Plaintiff submitted a response to Defendants' statement of undisputed facts, a motion requesting judicial notice and a declaration. (ECF Nos. 141, 142, 143.) A party bears the burden of supporting its motions and oppositions with the papers it wishes the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to scour the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010). With these standards in mind, the Court now turns to the motion for summary judgment.

### 1. Denial of Access to Courts in Violation of the First Amendment

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).

---

[8] Plaintiff asserts that Defendants were instructed by the litigation coordinator, V. Adams, to provide Plaintiff with confidential phone calls and they failed to give Plaintiff the calls each week. Plaintiff cites to Exhibit 9. However, Exhibit 9 is briefing from Monterey County Superior Court Case MS042730A, People of the State of California v. Will Palmer, and does not support Plaintiff's assertion. (ECF No. 141, pp. 44-48.) It appears that Plaintiff intended to reference Exhibit 8, which is a CDC 114-A Inmate Segregation Record. (ECF No. 141, pp. 37-42.) This record does not support Plaintiff's assertions that V. Adams instructed Defendants to provide Plaintiff with confidential phone calls and that Defendants failed to provide the calls.

Plaintiff also asserts that Defendants disliked him and requested that the Attorney General file a motion in the Superior Court to terminate the calls. (ECF No. 141, p. 7.) Plaintiff's assertion is unsupported and mere conjecture. Plaintiff is reminded of his obligations pursuant to Federal Rule of Civil Procedure 11, which requires that factual contentions presented to the Court have evidentiary support and that the failure to abide by this rule may subject a party to sanctions. Fed. R. Civ. P. 11(b), (c).

Christopher v. Harbury, 536 U.S. 403, 412–15, 122 S.Ct. 2179, 2185–87, 153 L.Ed.2d 413 (2002). A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." Lewis, 518 U.S. at 349-50. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353. The Supreme Court rejected the notion that the state must enable a prisoner to "litigate effectively once in court." Id. at 354 (quoting and disclaiming language contained in Bounds v. Smith, 430 U.S. 817, 825–26, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)); see also Cornett v. Donovan, 51 F.3d 894, 898–900 (9th Cir.1995) (determining that prisoners' right of access to the courts is limited to the pleading stage of a civil rights action or petition for writ of habeas corpus).  However, prisoners have a right under the First Amendment to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials.  Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011).

Plaintiff alleges that as a result of having his legal documents withheld and being denied access to an adequate law library, he had his habeas proceedings dismissed, he was unable to prosecute his civil proceedings effectively, and he specifically informed the criminal trial judge that he was pleading no-contest to charges as a result of being harassed and retaliated on by Defendants.[9]  (SAC, pp. 5-6.)

Habeas Proceedings

Here, the undisputed facts, including Plaintiff's own exhibits, demonstrate that Plaintiff's habeas petition in Palmer v. Lamarque, Case No. 2:00-cv-06982-JFW-JC, was dismissed on June 30, 2004, almost five months before Plaintiff was transferred to SATF.  UMF 11.  No reasonable jury could conclude that Defendants interfered with Plaintiff's access to the habeas court such that it resulted in dismissal of his case and Plaintiff has failed to establish a genuine dispute of material fact.

Plaintiff also makes issue of his inability to re-file rejected objections with the habeas court. According to the docket, on November 2, 2005, the habeas court permitted Plaintiff to resubmit a copy

---

[9] In screening Plaintiff's second amended complaint, the Court only found that Plaintiff's allegation that his habeas petition was dismissed due to his not having access to his legal property was sufficient to state a claim against Defendants Jordnt and Bardonnex.  (ECF No. 109, p. 6.)   Although the Court found no other cognizable allegations with regard to this claim, these Findings and Recommendations address the entirety of Plaintiff's allegations regarding the alleged denial of access to the court.

of objections, which he claimed to have been rejected by the court, within ten days. (ECF No. 138-3, Defs' Ex. B, p. 22, Entry 169.) This order was issued, and the objections were due, before Plaintiff was transferred to SATF. (UMF 12; ECF No. 143, Pl's Dec. ¶ 2.) Therefore, no reasonable jury could conclude that Defendants interfered with Plaintiff's ability to file objections.

Plaintiff asserts that he showed the November 2, 2005, habeas court order regarding submission of objections to Defendant Jordnt on December 14, 2005. (ECF No. 143, Pl's Dec. ¶ 30.) Plaintiff then admits that Defendant Jordnt provided Plaintiff with legal property the following day, on December 15, 2005, and that Defendant Jordnt informed Plaintiff that his property from CCI had not arrived. (ECF No. 143, Pl's Dec. ¶¶ 14-15.) This does not create a genuine issue of material fact. As noted above, the time for Plaintiff to submit his objections expired ten days after issuance of the November 2, 2005 order. In other words, the time for Plaintiff to submit objections had expired by the time he showed Defendant Jordnt the habeas court's order on December 14, 2005.

On January 5, 2006, the habeas court granted Plaintiff an additional ten days to re-file his copy of the objections. (ECF No. 138-3, Defs' Ex. B, p. 22, Entry 176). On January 18, 2006, the habeas court reminded Plaintiff of his obligation to submit his objections. (ECF No. 138-3, Defs' Ex. B, p. 23, Entry 178.) There is no record that Plaintiff submitted any objections or any other response to the habeas court's directives, including any request for an extension of time. On January 23, 2006, the habeas court denied Plaintiff's petition for a certificate of appealability. (ECF No. 138-3, Defs' Ex. B, p. 23, Entry 179.) Thereafter, the record reflects that Plaintiff continued in his efforts to litigate his habeas petition for at least four more years through 2011. UMF 13.

The undisputed docket entries and evidence demonstrate that Plaintiff's habeas petition was not terminated due to any actions (or omissions) on the part of Defendants Jordnt and Bardonnex. Although Plaintiff contends that the habeas court denied the petition for a certificate of appealability and thereby "reclosed" the case because Defendants Jordnt and Bardonnex refused to provide him with his legal property, this a conclusory allegation unsupported by any evidence. Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment.").

///

Civil Proceedings

Plaintiff additionally alleges that he was unable to litigate his civil proceedings effectively because of Defendants Jordnt and Bardonnex. Although under no obligation to do so, the Court has scoured Plaintiff's declaration in order to determine the underlying basis of Plaintiff's claim against Defendants' Jordnt and Bardonnex related to his civil action. In his declaration, Plaintiff contends that Defendant Bardonnex withheld his file and failed to retrieve specific documents concerning his civil case, Palmer v. Valdez, Case No. 03-04123 SI. (ECF No. 143, Pl's Dec. ¶¶ 40, 48.) Plaintiff asserts that this hindered his ability to prepare for trial. (Id.) However, Plaintiff does not provide any evidence of what documents were necessary and unavailable to him from his legal file or how the lack of these documents hindered his ability to prepare for trial. Indeed, Plaintiff provides no information regarding his civil matter, including relevant dates or proceedings. Generalized and conclusory statements are not sufficient to raise a genuine dispute of material fact. Rivera, 331 F.3d at 1078.

Plaintiff also claims that Defendant Bardonnex intentionally lost a motion to hold Defendant Bardonnex in contempt of court and refused to provide Plaintiff with any of the materials that he requested through the library paging system. (Id. at ¶¶ 38, 51.) Again, Plaintiff provides no evidence that he submitted any motion to Defendant Bardonnex or that he was unable to prepare another motion. Plaintiff's supporting exhibit merely identifies that pages were reportedly missing from an unidentified document. There is no mention of Defendant Bardonnex. (ECF No. 143, Pl's Dec. Ex. 8, pp. 27-28.) Further, Plaintiff also provides no evidence that he submitted any paging requests to Defendant Bardonnex or any evidence to dispute that Defendant Bardonnex was not responsible for the adequacy of the materials available in the library or their availability. (UMF 20.)

Crucially, Plaintiff has failed to establish an actual injury in his civil proceedings from any alleged actions by Defendants Jordnt and Bardonnex. Lewis, 518 U.S. at 353 (inmate must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded). Although Plaintiff asserts that Defendant Bardonnex's conduct resulted in the district court ruling in the civil defendants' favor based solely on credibility grounds, he has not provided any evidence related to the civil proceedings. (ECF No. 143, Pl's Dec. ¶ 49.)

///

<u>Criminal Case</u>

To the extent Plaintiff alleges that he was required to plead no-contest in a criminal case because of Defendants' actions, Plaintiff has not provided any specific facts to support this allegation or to establish a genuine dispute of material fact. Plaintiff claims that he was unable to conduct "the necessary legal research" and was not provided with legal supplies and court ordered phone calls. (ECF No. 143, Pl's Dec. ¶¶ 2, 5, 41, 42 and n. 2) Yet, Plaintiff fails to provide any evidence of the criminal court proceedings or Defendants' role in Plaintiff's own admitted acceptance of a plea agreement. (<u>Id.</u>) These conclusory assertions do not raise a genuine dispute of fact sufficient to defeat summary judgment. <u>Rivera</u>, 331 F.3d at 1078. Defendants' undisputed evidence establishes that they were not responsible for the adequacy of the law library or the availability of legal materials and they also were not responsible for ensuring Plaintiff's received court ordered phone calls. (UMF 20, 21.)

<u>Adequacy of Law Library</u>

Insofar as Plaintiff alleges that he was denied access to an adequate law library at SATF, inmates do not have the right to a law library or legal assistance. <u>Lewis</u>, 518 U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. <u>Id.</u> Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." <u>Id.</u> Plaintiff has not raised a triable issue of fact that he was unable to pursue a legal claim at the pleading stage because of alleged shortcomings in the library. Further, the undisputed facts demonstrate that Defendants Jordnt and Bardonnex were not responsible for, and had no control over, the adequacy of the law library. UMF 20.

In sum, the Court finds that Plaintiff has failed to establish a genuine dispute of material fact. Defendants are therefore entitled to summary judgment on Plaintiff's access to court claim.

**2. Retaliation in Violation of the First Amendment**

Within the prison context "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

1  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005); accord Brodheim v. Cry, 584 F.3d 1262,
2  1269 (9th Cir.2009). The court must "'afford appropriate deference and flexibility' to prison officials
3  in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."
4  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995) (quoting Sandin v. Conner, 515 U.S. 472, 482, 115
5  S.Ct. 2293, 132 L.Ed.2d 418 (1995)). The burden is on plaintiff to demonstrate "that there were no
6  legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

7  In its screening of Plaintiff's second amended complaint, the Court found Plaintiff's
8  allegations that, because he complained that he was not receiving library access and court ordered
9  phone calls, Defendants Lopez and Jordnt refused to release his legal property, and Defendant
10 Bardonnex destroyed his requests for copying sufficient to state a claim for retaliation in violation of
11 the First Amendment. (ECF No. 109, p. 5.)

12 However, Defendants Jordnt and Bardonnex have submitted undisputed evidence that they
13 were not responsible for release of Plaintiff's legal property by R&R, nor were they responsible for
14 confidential telephone calls or the adequacy of the law library. (UMF 15, 20, 21.) As discussed
15 above, Plaintiff's generalized, conclusory and unsupported allegations are not sufficient to defeat
16 summary judgment. Rivera, 331 F.3d at 1078. Moreover, Plaintiff has not filed a memorandum of
17 points and authorities to oppose Defendants' motion for summary judgment and he provides no legal
18 analysis as to how the facts claimed in his declaration are the product of retaliation on the part of
19 Defendants Jordnt and Bardonnex. Critically, Plaintiff has not raised a genuine dispute of fact that
20 Defendants Jordnt and Bardonnex undertook any adverse actions against him because of any protected
21 conduct. Rhodes, 408 F.3d at 567–68. Accordingly, the Court will recommend that Defendants'
22 motion for summary judgment be granted on Plaintiff's claim of retaliation in violation of the First
23 Amendment.

24 **3. Qualified Immunity**

25 Defendants contend that they are entitled to qualified immunity on Plaintiff's claims against
26 them. Based on the Court's finding and recommendation that Defendants be granted summary
27 judgment on Plaintiff's constitutional claims, the Court finds it unnecessary to reach the issue of
28 qualified immunity.

**V.      Conclusion and Recommendation**

For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for court order to compel discovery evidence in support of Plaintiff's opposition to the motion for summary judgment, filed on March 28, 2014, be denied;
2. Plaintiff's request for judicial notice be granted;
3. Defendants' motion for summary judgment, filed on January 1, 2014, be granted; and
4. Judgment be entered in favor of Defendants Jordnt and Bardonnex.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 30, 2014**                    /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE